UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GERALD KYLES,

          Plaintiff,

v.                                      Case Number 12-12026
                                      Honorable Thomas L. Ludington

MICHIGAN STATE POLICE,

          Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

In this case, the question is whether an unconsenting state agency is immune from a suit for money damages brought in federal court by one of the state's citizens.

Plaintiff Gerald Kyles, a Michigan resident, brought suit in this Court against Defendant Michigan State Police. Alleging excessive force, unlawful arrest, malicious prosecution, and various other constitutional violations, Plaintiff seeks money damages. Defendant, asserting sovereign immunity, now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Court, obligated to follow more than a century of Supreme Court precedent holding that an unconsenting state agency is immune from a citizen's suit for money damages, will grant Defendant's motion.

**I**

Because Defendant moves to dismiss the complaint pursuant to Rule 12(b)(6), in evaluating whether the complaint states claims on which relief may be granted the following facts from the complaint are assumed to be true.

Plaintiff is a Michigan resident. Compl. ¶ 2. On May 1, 2010, Defendant's officers arrested Plaintiff. *Id*. ¶ 8. During the arrest, and without provocation, an officer shot Plaintiff with a Taser. *Id*. ¶ 17. Following the arrest, and again without provocation, an officer repeatedly struck Plaintiff. *Id*. ¶ 42. Moreover, the officers lacked probable cause for the arrest as the complainant, Kayla Coon, was an unreliable witness. *See id*. ¶¶ 4, 8, 74. After establishing this, Plaintiff was later "cleared of [the] accusations" made by Ms. Coon. *Id*. ¶ 4.

On May 4, 2012, Plaintiff filed suit against Defendant in this Court. The complaint asserts claims for excessive force, unlawful arrest, malicious prosecution, and various other constitutional violations pursuant to 42 U.S.C. §§ 1983 and 1985, as well as related state law causes of action. As relief, Plaintiff seeks money damages.

Defendant now moves to dismiss the complaint pursuant to Rule 12(b)(6) based on Eleventh Amendment sovereign immunity.

**II**

To survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555–56).

**III**

"The Judicial power of the United States," the Eleventh Amendment provides, "shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

Although not plainly stated in the text of the Eleventh Amendment,[1] for more than a century the Supreme Court "has drawn upon principles of sovereign immunity to construe the Amendment to establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Port Authority Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990) (internal quotation marks omitted) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, (1984)); *see Edelmean v. Jordan*, 415 U.S. 651, 663 (1974) (collecting cases); *see generally Hans v. Louisiana*, 134 U.S. 1, 21 (1890) (observing that "any departure" from the rule that "exempts a sovereign state from prosecution in a court of justice at the suit of individual . . . except for reasons most cogent, (of which the legislature, and not the courts, is the judge,) never fails in the end to incur the odium of the world.").

Justice Antonin Scalia explains that "the Eleventh Amendment was important not merely for what it said but for what it reflected: a consensus that the doctrine of sovereign immunity . . . was part of the understood background against which the Constitution was adopted, and which its judicial provisions did not mean to sweep away." *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 31–32 (1989) (Scalia, J., concurring in part and dissenting in part); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 69 (1996) ("[W]e long have recognized that blind reliance upon the text of the Eleventh Amendment is to strain the Constitution and the law to a construction never imagined or dreamed of." (internal quotation marks omitted) (quoting *Principality of Monaco v. Mississippi*, 292 U.S. 313 (1934)); *see generally* Caleb Nelson, *Sovereign Immunity as a Doctrine of Personal Jurisdiction*,115 Harv. L. Rev. 1559, 1567–608 (2002) (providing historical background).

---

[1] As discussed below, the text provides that the federal judicial power does not extend to a suit "commenced or prosecuted against one of the United States by Citizens of another State."  U.S. Const. amend. XI. It says nothing of a suit commenced or prosecuted against one of the states by that state's own citizens.

The Amendment had its origin in the decision in *Chisholm v. Georgia*, 2 U.S. (Dall.) 419 (1793), in which the Court held that a South Carolina citizen could maintain an assumpsit claim against the State of Georgia in federal court. *See generally Seminole Tribe,* 517 U.S. at 68–69 (discussing *Chisholm* and the Eleventh Amendment); Richard Fallon et al., *Hart & Wechsler's The Federal Courts* 870–71 (6th ed. 2009) (same). The decision in *Chisholm*, the Supreme Court reports, "created such a shock of surprise throughout the country that, at the first meeting of congress thereafter, the eleventh amendment to the constitution was almost unanimously proposed, and was in due course adopted by the legislatures of the states." *Hans*, 134 U.S. at 11 (citing *Chisholm*); *see also Hart & Wechsler*, *supra*, at 871 ("A constitutional amendment to overrule *Chisholm* was introduced in the Senate only two days after the decision. In due course, both Houses of Congress proposed, and in 1798 the states ratified, the Eleventh Amendment."); *see generally* Akhil Reed Amar, *Of Sovereignty and Federalism*, 96 Yale L.J. 1425, 1473 (1987) (noting that the Eleventh Amendment "was undeniably designed to repudiate the majority analysis in Chisholm and overrule its holding").

The Eleventh Amendment expressly abrogated the holding of *Chisholm* that a state could be held liable to a citizen of another state in federal court, providing that the federal judicial power did not extend to suits "prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI.

Yet the express terms of the amendment, as noted, are silent as to suits commenced or prosecuted against one of the states by that state's own citizens. Addressing this textual silence about a century after the Eleventh Amendment's ratification, the Court took a pragmatic approach to the issue. *Hans*, 134 U.S. at 15. Reasoning that the amendment was proposed to

specifically abrogate *Chisholm* and restore the traditional understanding of state sovereign immunity, the Court explained:

> Can we suppose that, when the eleventh amendment was adopted, it was understood to be left open for citizens of a state to sue their own state in the federal courts, while the idea of suits by citizens of other states, or of foreign states, was indignantly repelled? Suppose that congress, when proposing the eleventh amendment, had appended to it a proviso that nothing therein contained should prevent a state from being sued by its own citizens in cases arising under the constitution or laws of the United States, can we imagine that it would have been adopted by the states? The supposition that it would is almost an absurdity on its face.

*Hans*, 134 U.S. at 15. To illustrate the traditional understanding of state sovereign immunity, the Court directed the reader to the "profound remarks" of *The Federalist*, in which it is observed:

> It is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent. This is the general sense and the general practice of mankind; and the exemption, as one of the attributes of sovereignty, is now enjoyed by the government of every state in the Union. . . . The contracts between a nation and individuals are only binding on the conscience of the sovereign, and have no pretension to a compulsive force. They confer no right of action independent of the sovereign will.

*The Federalist* 81 (Alexander Hamilton), *quoted in Hans*, 134 U.S. at 13; *but see generally* John Manning, *The Eleventh Amendment and the Reading of Precise Constitutional Texts*, 113 Yale L.J. 1663, 1668 n.20 (2004) (collecting scholarship critiquing Court's historical analysis); Martha A. Field, *The Eleventh Amendment and Other Sovereign Immunity Doctrines: Part One*, 126 U. Pa. L. Rev. 515, 534 (1978) ("[H]istory supports, at least, a lack of consensus concerning the status of sovereign immunity when the Constitution was ratified.").

In the intervening decades, the Court has since clarified that this immunity extends to state agencies, such as Defendant, as well as state officers acting in their official capacity. *E.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989); *Edelmean v. Jordan*, 415 U.S. 651, 663 (1974); *see also Lavrack v. City of Oak Park*, 194 F.3d 1313 (6th Cir. 1999)

(unpublished table decision) ("The district court properly dismissed [the plaintiff's] complaint against the Michigan State Police as this defendant is entitled to Eleventh Amendment immunity."). "When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest," the Court reasons, explaining: "Thus, the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelmean*, 415 U.S. at 663 (brackets, citation, and quotation marks omitted) (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)).

The immunity is not absolute, however: "States may consent to suit in federal court, and, in certain cases, Congress may abrogate the States' sovereign immunity." *Feeney*, 495 U.S. at 304 (internal citations omitted) (citing *Dellmuth v. Muth*, 491 U.S. 223 (1989); *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985); *Clark v. Barnard*, 108 U.S. 436, 447 (1883));

In this case, Defendant has neither consented to suit nor waived its sovereign immunity. On the contrary, Defendant has expressly raised its sovereign immunity in response to Plaintiff's suit. Moreover, Congress has not abrogated Defendant's sovereign immunity. *See, e.g.*, *Lavrack*, 194 F.3d 1313 (quoted above).

Consequently, Defendant is entitled to judgment as a matter of law.

**IV**

Accordingly, it is **ORDERED** that Defendant's motion to dismiss the complaint (ECF No. 4) is **GRANTED**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: August 31, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 31, 2012

s/Tracy A. Jacobs
TRACY A. JACOBS